**DAVID ALBERT SMITH,**

                    **Plaintiff,**

**-vs-**                                         Case No.  **8:11-cv-964-T-33DNF**

**MICHAEL J. ASTRUE**
**COMMISSIONER OF SOCIAL**
**SECURITY,**

                    **Defendant.**
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This matter comes before the Court on Plaintiff David Smith's Complaint (Doc. #1), filed on

May 3, 2011, seeking review of the final decision of the Commissioner of the Social Security

(Commissioner) denying Plaintiff's claim for Disability Insurance Benefits and Supplemental Security

Income. Plaintiff filed his Memorandum of Law in support of the Complaint (Doc. #16) on September

8, 2011. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr."

followed by the appropriate page number). The Commissioner filed the Memorandum of Law in

support of the Commissioner's decision (Doc. #17) on November 7, 2011. Thus, the case is now ripe

for review.

    The Court has reviewed the record, including a transcript of the proceedings before the

Administrative Law Judge, the exhibits filed and administrative record, and the pleadings and

memoranda submitted by the parties in this case.

# I. Social Security Act Eligibility, Procedural History, and Standard of Review

## A. Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404,1511.

## B. Procedural History

On May 14, 2007, Plaintiff filed an application for Disability Insurance Benefits ("DIB"). Plaintiff also filed an application for Supplemental Security Income ("SSI") on April 5, 2007. In both applications Plaintiff alleged disability beginning May 5, 2006. (Tr. 20). His claims were initially denied on July 3, 2007, and upon reconsideration on November 29, 2007. On September 4, 2009, a hearing was held in Tampa before Administrative Law Judge ("ALJ") Richard E. Ouellette. (Tr. 18). The ALJ's decision, dated February 10, 2010, denied Plaintiff's request for disability insurance benefits and supplemental security income. (Tr. 18-30). The Appeals Council denied Plaintiff's Request for Review on July 26, 2011. (Tr. 1-3). Therefore, the decision of the ALJ is final.

## C. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)).

In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations[1] (20 C.F.R. §§ 404.1520(a), 404.920(a)). The Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at 2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835 (11th Cir. 1982)); Richardson, 402 U.S. 389 at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d 1553 at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

---

[1] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

Step 1. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

Step 2. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.

Step 3. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, the next question must be resolved.

Step 4. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

## II Review of Facts

### A. Background Facts

On the date of the ALJ's decision, Plaintiff was 47 years old. (Tr. 21). Plaintiff only completed the 7th grade, but he is able to read and write. (Tr. 21). Plaintiff said he never received a GED, but a consultative examination reported that he did. (Tr. 21). Plaintiff previously worked as a security guard, but he quit due to his back pain. (Tr. 25 ).

Plaintiff alleges he became disabled on May 5, 2006, due to debilitating back, leg and hip pain. (Tr. 20-21). Plaintiff used to enjoy martial arts, soccer, riding dirt bikes, jogging, working on cars, doing yard work, hunting and fishing, but now is unable to perform these activities because of his back and leg pain. (Tr. 21). Plaintiff also claims he is unable to perform these activities because he has problems with his memory and must be reminded to take his medications. (Tr. 21). At the time of this claim, Plaintiff described being unable to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, understand, use his hands or get along with others. (Tr. 21). However, Plaintiff is still able to prepare sandwiches, heat up food in a microwave, drive an automatic vehicle, leave home by himself, and manage money. (Tr. 21).

### B. The ALJ's Findings

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 5, 2006. (Tr. 20). Although Plaintiff earned $10,448.53 for 2006, he stopped working in May of 2006

and his wages represent "a lot of hours." (Tr. 20). The ALJ found that even though Plaintiff made money for part of 2006, it did not rise to the level of substantial gainful activity, as defined in the Social Security Act. (Tr. 20-21).

At step two, the ALJ found that Plaintiff has severe impairments including: 1) degenerative disc disease of the lumbar spine; 2) lumbar radiculopathy; 3) cervical degenerative disc disease; 4) lumbar spondylosis; 5) bursitis; and 6) adjustment disorder with depressed mood. (Tr. 21). Plaintiff has a strained family relationship due to physical and financial problems, and has a history of drinking alcohol that resulted in a DUI almost 20 years ago. (Tr. 21). Plaintiff also has a past history of substance abuse in the 1980s. (Tr. 21). Plaintiff has a limited ability to perform activities of daily living due to his low back pain and stiffness, along with neck pain that causes headaches. (Tr. 21). Plaintiff is unable to shave, button or fasten clothes, vacuum, do dishes or bend to get laundry out of a dryer. (Tr. 22).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § § 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 22). The ALJ determined after reviewing all of the medical evidence that there was no medical reason or explanation from any treating source that Plaintiff is totally disabled. (Tr. 22). Moreover, the ALJ found that the evidence of record establishes there is no compelling objective evidence to substantiate Plaintiff's allegations of being unable to perform any type of work activity. (Tr. 22).

The ALJ found Plaintiff's mental impairment does not meet or medically equal the criteria of listing 12.06. (Tr. 22). In making this finding the ALJ considered whether "paragraph B" criteria are satisfied, and found that they are not. (Tr. 22). Although Plaintiff has mild nerve problems, he has

never been given psychotropic medication. (Tr. 22). The ALJ found that evidence does not demonstrate motor tension, autonomic hyperactivity, vigilance and scanning, apprehensive expectation, persistent irrational fear, severe panic attacks or recurrent obsessions and compulsions. (Tr. 22). Thus the ALJ found that while Plaintiff has mild symptoms of depression, it is not a condition which has incapacitated Plaintiff for a prolonged period of time. (Tr. 22).

The ALJ found Plaintiff has no restrictions in activities of daily living and is able to get out of bed every morning, perform limited chores around the house, shop, drive a car, and go to the doctor when necessary. (Tr. 23). The ALJ concluded that a person with anxiety or depression would not be able to perform these activities. (Tr. 23). Next, the ALJ found Plaintiff has moderate difficulties with regard to concentration, persistence or pace but has not been determined by a physician to be at risk of decompensation under stressful conditions. (Tr. 23). Thus because Plaintiff's mental impairments have not caused at least two limitations, the criteria for "paragraph B" is not satisfied. (Tr. 23).

At step four, the ALJ found Plaintiff has the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The ALJ also found that Plaintiff can lift no more than 10 pounds occasionally, sit for up to 6 hours in an 8 hour workday, stand and walk for no more than 2 hours in an 8 hour workday, and has a frequent limitation for climbing and working at unprotected heights and an occasional limitation for bending, stooping, crouching and kneeling. (Tr. 23). The ALJ determined Plaintiff is able to perform routine tasks in an environment that allows for sit-stand option. (Tr. 23). In making this finding the ALJ concludes Plaintiff can perform simple unskilled work and has the ability to get along with supervisors, employees and the general public and furthermore, Plaintiff is not at risk of decompensation under stress. (Tr. 26).

At step five, the ALJ found Plaintiff is unable to perform any past relevant work. (Tr. 28). The vocational expert testified that Plaintiff's past work as a security guard is classified as light semiskilled work, and thus Plaintiff is unable to perform his past work. (Tr. 28).

The ALJ also found that Plaintiff was 44 years old on the date of the application and is defined as a younger individual. (Tr. 28). Further, Plaintiff has a limited education but can read and write in English. (Tr. 28). Although Plaintiff has work skills from past relevant work, he is unable to perform his past relevant work. (Tr. 29). A vocational expert testified that given Plaintiff's age, education, work experience, and residual functional capacity, he is able to transfer to other occupations with jobs in significant numbers in the national economy. (Tr. 29). The ALJ concluded that Plaintiff is not disabled. (Tr. 30).

### C. Plaintiff's Medical History

Plaintiff alleges his disability began in May 2006. (Tr. 20). At that point Plaintiff had to stop work because the pain was too bad to continue working. (Tr. 40). Plaintiff went to Gulf to Bay Pain Management starting in 2006 for back pain. (Tr. 147). Plaintiff had MRI scans of his back which revealed back problems. (Tr. 245-46). Plaintiff started physical therapy at that time. In August of 2006 Plaintiff first visited South Bay Diagnostics for pain management. (Tr. 148, 245). At this time, Plaintiff started a series of injections to treat his back pain. (Tr. 245). On August 1, 2006, Plaintiff went to South Bay and had two different pain medications injected into his buttocks to relieve his back pain. (Tr. 287-88).

Plaintiff sought further care for back pain and muscle spasms on September 20, 2006. (Tr. 267). Plaintiff did therapy and stretches which eased the pain although he was not able to return to his job because of the pain in his left hip. (Tr. 267).

On January 4, 2007, Plaintiff was referred to Gerald Nickerson, M.D. by Dr. Hafeez, his family physician. (Tr. 308). Dr. Nickerson found that Plaintiff had left lumbar paravertebral tenderness and severe tenderness over the left SI join. (Tr. 309). Dr. Nickerson concluded that Plaintiff had back problems, SI joint arthropathy on the left side and bursitis on the left side. (Tr. 309). Dr. Nickerson gave Plaintiff an injection in his left side and also scheduled Plaintiff for a lumbar epidural injection for January 15, 2007. (Tr. 310). On January 15, 2007, Dr. Nickerson administered a lumbar epidural injection at the L4-5 site. (Tr. 314). On January 19, 2007, Plaintiff returned to Dr. Nickerson with persistent hip pain. (Tr. 306). Dr. Nickerson found that Plaintiff responded well to the lumbar epidural injection and that Plaintiff had left SI degenerative joint disease and gave Plaintiff another SI joint injection. (Tr. 307). On January 22, 2007, Plaintiff received another left SI joint injection along with local anesthesia. (Tr. 313).

In February 2007, Plaintiff went to Dr. Nickerson. Plaintiff said he was involved in a boating accident in the past, and then he has had back and hip problems that have continually worsened. (Tr. 263). On February 6, 2007, Plaintiff returned to Dr. Nickerson stating that he was doing better since his epidural steroid injection for his back pain and his sacroilliac joint injection on his left side for hip pain. (Tr. 304). Dr. Nickerson noted tightness in Plaintiff's hamstrings, referred him to physical therapy, and proscribed vicodin for pain. (Tr. 305). On February 20, 2007, Plaintiff told Dr. Nickerson his pain was starting to decrease but was exacerbated by prolonged sitting and the deep tissue massages that were part of his physical therapy. (Tr. 303).

On March 6, 2007, Plaintiff went to Dr. Nickerson with left hip pain that was radiating through his leg. (Tr. 302). Plaintiff was scheduled for an SI joint injection and instructed to discontinue physical therapy. (Tr. 302). On March 15, 2007, Plaintiff received a sacroiliac joint injection in his

left side through a spinal needle. (Tr. 312). On March 27, 2007, Plaintiff stated that his pain had improved since the injection, and he is still on various pain medications. (Tr. 301). Dr. Nickerson noted Plaintiff continued to have degenerative joint disease, opioid dependence, and bursitis on his left side. (Tr. 301).

On April 10, 2007, Plaintiff was seen by Dr. Nickerson for his left hip pain and his low back pain. (Tr. 300). Plaintiff stated that his hip pain is exacerbated by prolonged sitting, while his low back pain is exacerbated by prolonged standing. (Tr. 300). Dr. Nickerson found that Plaintiff had tenderness to palpitations over his left side and that he had signs of joint arthropathy and degenerative joint disease. (Tr. 300). On April 25, 2007, Plaintiff went to Dr. Nickerson and said his low back pain had "improved dramatically." (Tr. 298). This was immediately after Dr. Nickerson completed a left greater trochanteric bursa injection which involved inserting a needle with a cocktail of medications into his left hip. (Tr. 299). Afterwards, Plaintiff felt that he could discontinue taking MS Contin (an oral form of morphine), even though he stated he continued to have left thigh pain along with left hip pain. (Tr. 298).

In May 2007, Plaintiff returned to South Bay Hospital where Plaintiff told medical staff he had no physical limitations prior to a boating accident. According to Plaintiff, it was after this accident that he started having problems with back and hip pain on his left side. (Tr. 263). Plaintiff reported hip pain on his left side with a cramping pain all the way down his thigh to his ankle. (Tr. 262). Plaintiff was given specific exercises and stretches to perform. (Tr. 262). Later that month, Plaintiff participated in physical therapy consisting of exercises and stretches as well as an ultrasound to the left hip. (Tr. 261). At the end of month, on May 23, 2007 Plaintiff had an appointment with Dr. Nickerson who found that Plaintiff had a full range of motion on flexion, extension, rotation and lateral flexion,

but that he had a pain trigger point in his left gluteus. (Tr. 297). Plaintiff was to continue his pain medication, viocodin and continue with physical therapy and other therapeutic exercises. (Tr. 297).

On July 3, 2007, Plaintiff's medical file was assessed by Brian Pulling, a disability examiner[2], for a physical residual functional capacity assessment. (Tr. 315-22). Pulling determined Plaintiff was not disabled, although he did have a back disorder and degenerative discs. (Tr. 77). Pulling found that Plaintiff was improving with physical therapy and he felt the bursitis and SI joint arthropathy was resolved. (Tr. 316). On July 17, 2007, Plaintiff was admitted to South Bay Hospital for epidural injections at the L4-5 interspace. (Tr. 329). Plaintiff was discharged and asked to return in two weeks for a repeat procedure. (Tr. 329). On July 31, 2007, Plaintiff was again admitted to South Bay Hospital, placed under anesthesia and given epidural injections. (Tr. 327).

On August 14, 2007, Plaintiff was admitted to South Bay Hospital for injections. (Tr. 326). Plaintiff was admitted for lumbar degenerative disk disease with left lower extremity radiculopathy. (Tr. 326). Plaintiff was treated by being placed under sedation for a left side L4-5 interlaminar epidural injection and fluoroscopic guidance. (Tr. 326).

In September 2007, Plaintiff filled out an SSA Function Report. (Tr. 211-218). Plaintiff detailed his typical day which included taking medication, feeding fish, taking a bath, resting on the couch and once or twice a week doing dishes and folding some clothes. (Tr. 211). Plaintiff also noted that he cannot sleep more than a few hours without having to get up to change positions. (Tr. 212). In addition, after certain procedures such as spinal injections for pain management he is unable to dress, bathe or care for himself. (Tr. 212). Other than the days surrounding these procedures, Plaintiff can do some light household chores such as putting away dishes. (Tr. 213). On September 11, 2007,

---

[2] Brian Pulling's credentials were not provided.

Plaintiff went to South Bay Hospital for an MRI of the spine because of neck pain. (Tr. 330). Plaintiff was found to have mild cervical spondylosis at C4 and C5 with slight impingement on the neural forament on the left, and there was no evidence of disk herniation. (Tr. 330). On September 20, 2007, Plaintiff filled out forms for the SSA detailing his pain symptoms, medications and the effects on his day-to-day life. (Tr. 230-33). In these forms, Plaintiff stated he was in pain 24 hours a day, 7 days a week. (Tr. 231). He also noted that he has difficulty washing his lower extremities, tying shoes, standing up and even lying down. (Tr. 232). Furthermore, he is unable to take care of his family's home, maintain their yard and has difficulty getting into and out of cars. (Tr. 232). Plaintiff also notes he is on three different medications, two of which have to be taken three times a day in an attempt to manage his pain. (Tr. 231).

On October 30, 2007, Plaintiff received an epidural steroid injection because of his back and hip pain. Plaintiff was diagnosed with having cervical degenerative disk disease with upper extremity radiculopathy. (Tr. 417).

On November 7, 2007, Plaintiff was referred to John T. Super, Ph.D. by the Office of Disability Determinations to gather information to assist the determination of his disability. (Tr. 332). Dr. Super interviewed Plaintiff and found that there were no symptoms suggestive of psychotic processes, he was able to recall sequences after presentation, he understood common sayings and had no features of anxiety. (Tr. 334). Dr. Super found Plaintiff was competent to handle his finances (mentally) after asking him simple math questions involving making change. (Tr. 335). Dr. Super concluded by noting the Plaintiff reported being unable to engage in previously enjoyed activities because of his back pain and depression. (Tr. 335). On November 15, 2007, Plaintiff's file was reviewed by Jim Andriole, D.O., and Plaintiff was determined to be not disabled, although again it was found he had a back

disorder and degenerative discs, as well as migraines. (Tr. 336-45). On November 27, 2007, Plaintiff

went to Gulf-to-Bay and received a transforaminal ESI injection at his L4 and L5 discs and was

diagnosed with disc disease. (Tr. 416). On November 28, 2007, Plaintiff's file was reviewed by Robin

McCallister, Ph.D. for a psychiatric review. (Tr. 346-59). Dr. McCallister found Plaintiff had an

impairment that was related to a medical issue; that Plaintiff had ETOH abuse in partial remission; that

Plaintiff had no restriction of activities of daily living, but that Plaintiff had mild difficulties in

maintaining social function and concentration, persistence or pace. (Tr. 346-59). Dr. McCallister

concluded based on review of Plaintiff's file that he needs no reminders for self-care; that he does have

physical limitations but helps with light chores and limited meal preparations, and that the majority of

any disruptions in concentration are due to his pain and pain medications. (Tr. 358).

  In December 2007, Plaintiff had an MRI of the lumbar spine at South Bay Hospital. (Tr. 397).

The MRI found that there L1-2, L2-3 and L3-4 discs were "unremarkable," but at L4-5 there was a

mild desiccation of the disc, and a bulge which produced a mild narrowing of the right lateral recess.

(Tr. 397). It also found that at the level of L5-S1 there were mild degenerative changes of the facet

joints. (Tr. 397).

  On April 2, 2008, Plaintiff went to Willem Nel, M.D. for injections at three different locations

in his spine as well as a left hip injection. (Tr. 414). On April 16, 2008, Plaintiff went to South Bay

Hospital for a sciatic nerve root injection. (Tr. 413). On April 30, 2008, Plaintiff underwent injections

again at the L3-L4, L4-L5, L5-S1 lumbar facet joints as well as the left SI joint. (Tr. 410). Plaintiff

was instructed to return in 2 weeks for another round of injections. (Tr. 410).

On May 14, 2008, Plaintiff returned to South Bay Hospital for more injections, this time he was given injections under sedation at the L3-L4, L4-L5, L5-S1, and the left SI joint. (Tr. 407). Plaintiff was discharged and returned in 2 weeks for a repeat procedure. (Tr. 407).

In August 2008, Plaintiff went to Dr. Nel and was diagnosed with sciatica and given a sciatic nerve injection. (Tr. 408). In July 2009, Plaintiff went to Tampa General Hospital with back and hip pain. (Tr. 400-05). Plaintiff was seen by Dr. Nel. (Tr. 400). Plaintiff was found to have sacroilitis and had a lumbar facet joint injection as well as a sacroiliac joint injection performed under sedation. (Tr. 401). Plaintiff was instructed to return in two weeks for a repeat procedure. (Tr. 401).

In August 2009, Plaintiff went for another MRI on his spine. (Tr. 453-54). Plaintiff was found to have some loss of intervertebral disc signal at the L4-L5 level, which is consistent with degenerative disc desiccation. (Tr. 453). Other than that, there was no finding of disc protrusions or extrusions. (Tr. 453).

Plaintiff testified during his hearing before the ALJ on September 4, 2009, that he was 47 years old and lives with his wife and eight year old daughter. (Tr. 39). Plaintiff testified he had to stop work on or about May 5, 2006, because his pain was too bad for him to continue. (Tr. 40). Plaintiff explained that he can no longer maintain their home, has difficulty climbing the steps to his home and sometimes has to use two feet at a time on each step because of the pain and aggravation it causes to his left side. (Tr. 41-42). Plaintiff testified he is able to drive for short periods of time and typically drives two to three times a week to check on his mother who lives a couple of miles away. (Tr. 42). Plaintiff used to drive a standard transmission but was forced to change to automatic transmission because he can no longer operate a clutch. (Tr. 43). Plaintiff explained that if he sits more than 20 minutes in his car he gets "locked up" and cannot move and it takes more than 20 minutes for him to

be able to move again.  (Tr. 43-44).  Plaintiff also has shooting pains in his leg if he presses the brakes too many times.  (Tr. 43).  Plaintiff described headaches that cause vision problems, and said he has difficulty writing because of the pain in his neck which causes tremors in his hands.  (Tr. 44).  Plaintiff testified that he has pain in his lower back all day, everyday and that it continues to get progressively worse.  (Tr. 49).  At the time of his testimony, Plaintiff said the pain has moved from the left to the center and the right hand side of his body, and that he had just had injections on his right side less that two weeks prior to the hearing.  (Tr. 49).  Plaintiff testified he cannot stand more than 45 minutes without having to sit because of pain, and that even when he is standing he needs to move around.  (Tr. 51-52).  During the hearing, Plaintiff had to stand to continue testifying due to pain from sitting too long.  (Tr. 52).  Plaintiff discussed his typical day which starts off with a hot bath because in the mornings he is dizzy and unable to stand for a shower.  (Tr. 54).  Plaintiff also testified that he is on four medications: he takes vicodin four times a day; ultram three times a day; elavil once every night, and a muscle relaxer three times a day.  (Tr. 55).

Plaintiff's wife, Jackie Smith, also testified at the hearing.  (Tr. 68-73).  Ms. Smith testified that Plaintiff can no longer work or support the family; that he lays down three to four times a day and spends the majority of the day in a recliner.  (Tr. 69-70).

A vocational expert, Theresa Manning testified.  (Tr. 72-75).  Ms. Manning's testimony was based solely on a review of Plaintiff's file.  (Tr. 72-73).  Ms. Manning testified that based upon the ALJ's hypothetical and determination, Plaintiff can perform sedentary work, and there are jobs that the Plaintiff can perform.  (Tr. 74).  Ms. Manning further testified that examples of these types of jobs include security monitor, telephone solicitor, and final assembler, all of which are available locally and nationally.  (Tr. 74).  In response to questioning by Plaintiff's counsel,  Ms. Manning testified that if

Plaintiff's hand tremors were taken into account it would eliminate the final assembler position, and if you take into account the fact Plaintiff needs to lie down at least one or two times during the workday from anywhere between 30 and 60 minutes in addition to be unable to attend work for more than 2 days per month (due to spinal injections) it eliminates Plaintiff's ability to perform any job. (Tr. 75).

**III Specific Issues and Conclusion of Law**

Plaintiff raises five issues on appeal. As stated by Plaintiff, they are: (1) the ALJ erroneously found Plaintiff's testimony less credible based on Plaintiff's ability to perform daily activities; (2) the ALJ failed to consider the combined effect of all impairments; (3) the ALJ erred in determining Plaintiff's RFC; (4) the ALJ erred by engaging in "sit and squirm jurisprudence;" and, (5) the ALJ erred in failing to make a proper credibility finding as to Plaintiff's testimony, and erred in improperly discrediting Plaintiff's complaints of pain and subjective symptoms.

**A. Whether the ALJ Erroneously Found Plaintiff's Testimony Less Credible Based on Plaintiff's Ability to Perform Daily Activities.**

Plaintiff argues that the ALJ committed error by considering Plaintiff's testimony less credible based on the fact Plaintiff can perform limited daily activities. (Doc. 16, p. 4). The Commissioner argues that the Eleventh Circuit indicates it is appropriate to consider Plaintiff's daily activities in evaluating allegations of disabling pain. (Doc. 17, p. 5).

Credibility determinations are within the province of the ALJ. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). If a claimant testifies as to his subjective complaints of disabling pain and other symptoms, the ALJ must clearly articulate explicit and adequate reasons for discrediting

claimant's allegations; though the ALJ need not make explicit finding as to credibility, the implication must be obvious to the reviewing court. <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005). In making an assessment of credibility of claimant's subjective complaints of disabling pain and other symptoms, the ALJ need not cite any particular phrases or formulations, but the ALJ's determination cannot be merely a broad rejection, which is insufficient to enable reviewing court to conclude the ALJ considered claimant's medical condition as whole. <u>Dyer</u>, at 1210. If a Plaintiff testifies as to his subjective complaints of disabling pain and other symptoms, the ALJ must clearly "articulate explicit and adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms. <u>Foote</u>, at 1561-62.

In this case, the ALJ took in account Plaintiff's subjective complaints as well as the medical evidence in determining Plaintiff's credibility. The ALJ systematically articulated his reasons for rejecting Plaintiff's subjective complaints of pain. The ALJ addressed Plaintiff's complaints of pain by addressing Plaintiff's description of being unable to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, understand, use his hands or get along with others. (Tr. 21). The ALJ also found that Plaintiff (according to Plaintiff's own testimony) is able to prepare light meals, heat up food in the microwave, leave his home alone, drive, go grocery shopping with his spouse, and handle money. The ALJ even acknowledged that Plaintiff cannot perform certain chores such as shaving, buttoning or fastening clothing, vacuuming, dishwashing and bending to get laundry out of the dryer. (Tr. 22). The ALJ considered Dr. Super's evaluation and Plaintiff's own testimony that Plaintiff can wash counters, fold blankets, shop with his mother one to two times a week, and drive three to four times a week. (Tr. 335). Based on this information, the ALJ properly found Plaintiff's level of activity was inconsistent with his allegation of debilitating limitations.

Moreover, Plaintiff's own testimony and daily activities were not the ALJ's sole basis for finding Plaintiff's testimony less than credible. The ALJ relied on an MRI taken in August 2009 that revealed early stages of degenerative disc disease but that there was no evidence of spinal stenosis, disc protrusions, extrusions or spondylolisthesis. (Tr. 25, 453). The ALJ also found based on doctors' reports and Plaintiff's testimony that pain medications, injections and physical therapy were relatively effective in treating Plaintiff's pain. (Tr. 28, 261, 297, 298, 300, 306, 361).

In sum the ALJ considered Plaintiff's daily living activities and concluded that Plaintiff's testimony does not support a finding of total disability. The ALJ took into consideration Plaintiff's subjective testimony as well as objective medical reports in deciding the weight to give each. (Tr. 21-30). The ALJ explicitly addressed Plaintiff's pain as well as Plaintiff's own testimony as to his range of abilities in the ALJ's opinion. The Court finds the ALJ did not err in finding Plaintiff's testimony less credible based on Plaintiff's ability to perform daily activities.

**B. Whether the ALJ Failed to Consider the Combined Effect of all Impairments.**

Plaintiff argues that the ALJ failed to consider the combined effect of all of Plaintiff's impairments, and instead summarily stated Plaintiff's impairments did not meet or medically equal a listed impairment and provided no analysis or discussion. (Doc. 16, p. 5).

The Commissioner argues the ALJ took all impairments into account and that his statement sufficiently reflects proper consideration of Plaintiff's impairments. (Doc. 17, p. 8). The Commissioner claims the ALJ discussed all of Plaintiff's physical and mental impairments in singly and in combination as well as their impact on Plaintiff's ability to work. (Doc. 17, p. 9).

When an ALJ states in his decision that "based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments*," it is clear the ALJ considered the combination issue. Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).

In this case, the ALJ made a finding that, "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments..." According to Wheeler this statement is sufficient to determine that the ALJ did take into account each impairment and a combination of impairments. In his opinion, the ALJ went through each of Plaintiff's impairments (mental impairment, mild nerve problems, daily living, mild social functioning difficulties, moderate difficulties in concentration, persistence and pace, and any episodes of decompensation) and considered and explained his finding for each in determining Plaintiff's RFC. (Tr. 22-23). The Court finds the ALJ did consider both singly and in combination the effects of Plaintiff's impairments, and therefore did not err in his determinations.

### C. Whether the ALJ Erred in Determining Plaintiff's RFC.

Plaintiff argues the ALJ erred in determining Plaintiff's RFC because the RFC failed to include Plaintiff's side effects from his medications, including drowsiness, dizziness, decreased grip strength, and his memory difficulties, and that the ALJ erred by not incorporating these into a hypothetical to the VE. (Doc. 16, p. 7). The Commissioner argues the ALJ referenced each of Plaintiff's allegations and concluded that they did not reach the intensity or persistence to the extent alleged, and the ALJ was therefore not required to include these allegations in the RFC finding or in a hypothetical to a VE. (Doc. 17, p. 9).

An ALJ is not required to include findings in the hypothetical to a vocational expert that he has rejected as unsupported. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004). In this case, the ALJ addressed each of Plaintiff's side effects in his opinion and found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; but that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms. (Tr. 27). The ALJ found Plaintiff's subjective complaints about these side effects to be unsupported and thus according to Crawford was not required to include these symptoms in a hypothetical to the VE.

Furthermore, state agency psychological consultants completed a Physical Residual Functional Capacity and found that Plaintiff had a residual functional capacity for light work with no limitations. (Tr. 27, 338-345). The ALJ determined Plaintiff could perform sedentary work in an environment that allows for a sit stand option. (Tr. 23). The ALJ made this finding to allow Plaintiff to sit or stand as needed to help reduce any back or hip pain. The Court finds the ALJ did not err in determining Plaintiff's RFC.


**D. Whether the ALJ Erred by Engaging in "sit and squirm jurisprudence."**

Plaintiff argues the ALJ erred by relying on his personal observations of Plaintiff at the hearing. (Doc. 16, p. 8). The Commissioner argues that Plaintiff's appearance and levels of activity were not the ALJ's sole basis for finding Plaintiff's testimony less than credible. (Doc. 17, p. 6).

An ALJ is not prohibited from considering Plaintiff's appearance and demeanor during the hearing. Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987). Here, as in Macia, the ALJ did note Plaintiff's demeanor but did not discredit his testimony solely on that basis. Rather the ALJ clearly

stated other factors, such as medical evidence and doctors' findings regarding the credibility of Plaintiff's subjective allegations in comparison to the objective medical evidence. (Tr. 27). The Court finds the ALJ did not err in commenting on Plaintiff's appearance and demeanor while testifying because this was just one of the many factors the ALJ considered in determining Plaintiff's RFC.

**E. Whether the ALJ Erred in Failing to Make a Proper Credibility Finding as to Plaintiff's Testimony, and Erred in Improperly Discrediting Plaintiff's Complaints of Pain and Subjective Symptoms.**

Plaintiff argues the ALJ erred in speculatively finding that Plaintiff exaggerated his symptoms and limitations in order to increase the potential of receiving disability benefits. (Doc. 16, p. 9). The Commissioner argues that the ALJ did consider objective medical evidence and information from Plaintiff and treating physicians as well as other factors when making his decision. (Doc. 17, p. 4).

In order to establish a disability based on testimony of pain and other symptoms, the Plaintiff must satisfy two parts of a three-part test showing: 1) evidence of an underlying medical condition; and 2) either (a) objective medical evidence confirming severity of the alleged pain; or (b) the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Id. Failure to articulate reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

In this case the ALJ addressed the pain test set forth in <u>Wilson</u> and then articulated his reasons for discrediting Plaintiff's testimony as to the intensity, persistence and limiting effects of Plaintiff's symptoms. The ALJ starts with laying out the two-part pain test from <u>Wilson</u> and concludes that, "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 27). Thus the ALJ discrediting Plaintiff's testimony only concerning the intensity, persistence and limiting effects of the pain. The ALJ then proceeds to go chronologically through both the medical evidence and Plaintiff's subjective testimony as to his pain and symptoms. (Tr. 23-28). The ALJ specifies exhibits and particular doctors' reports and notes the weight he gave to each in making his determination. The ALJ also makes observations based on Plaintiff's testimony at the hearing when the ALJ met and observed Plaintiff in person. The ALJ even details Plaintiff's subjective report as to how long he can sit, stand, walk or perform other tasks and the rest needed between such activity. (Tr. 26). The ALJ concludes, "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 27). Unlike <u>Carpenter v. Astrue</u>, where the Court held the ALJ made a credibility determination and failed to adequately explain it, the ALJ in this case detailed Plaintiff's entire medical history and

specified weights accorded to doctors' findings and Plaintiff's testimony. <u>Carpenter v. Astrue</u>, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). The Court finds the ALJ did not err in making a credibility finding of Plaintiff's subjective complaints because he offered explicit and clear statements regarding his reasoning.

### IV. Conclusion

The ALJ did not err in weighing Plaintiff's testimony, in considering Plaintiff's combined impairments or in determining Plaintiff's RFC. In addition the ALJ did not engage in 'sit and squirm jurisprudence,' or err in making a credibility finding as to Plaintiff's testimony.

Accordingly, it is **RESPECTFULLY RECOMMENDED** that:

The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g)

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended in Chambers in Ft. Myers, Florida this 10th day of July , 2012.



DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies:
To All Parties